# PATTERSON v. GADDY.—191 S. W. (2d) 556.

Western Section.   June 7, 1944.

Petition for Certiorari denied by Supreme Court, February 3, 1945.

488

Martin Exum, of Jackson, for appellant.

D. E. Mitchell, of Henderson, and Holmes & Holmes, of Trenton, for appellees.

ANDERSON, P. J. The original bill was filed by Patterson against A. L. Gaddy and C. H. Little & Company, it being alleged that the latter was a corporation. The object is to remove as a cloud on the complainant's alleged title to a small tract of land a deed alleged to have been executed by C. H. Little & Company to Gaddy.

The bill charges that complainant owned the tract of land, a portion of which lies in Forked Deer Drainage District No. 1 of Chester County, Tennessee; that the defendant Gaddy agreed to purchase the land from the complainant for a consideration of $2250; that Gaddy agreed to investigate the question of the amount of taxes on the land and that when the facts were ascertained would pay such taxes and deduct the amount from the purchase price; that in the course of the investigation Gaddy discovered that that part of the land in the Drainage District had been sold in a proceeding in the Chancery Court styled Chester County, Tennessee, for the use of Forked Deer Drainage District No. 1, of Chester County, Tennessee, v. L. W. Patterson et al., brought for the purpose of enforcing the collection of drainage assessments and that at said sale C. H. Little & Company had become the purchaser; that upon discovering these facts, instead of paying the taxes as he had agreed, Gaddy, for a consideration of $100 cash procured a quit claim deed from C. H. Little & Company for that portion of the land lying in the Drainage District.

It is then charged that "Gaddy acted fraudulently toward your complainant in that he did not disclose to him the condition of the title" and abide by his agreement to inform the complainant as to the amount of taxes due and that as a result Gaddy took the title in trust for the complainant.

In addition to the foregoing it is also charged that C. H. Little acquired no title by reason of its purchase at the Chancery sale "because said original bill was filed for the purpose of collecting taxes on Drainage District No. 1, was without authority as the same was not authorized by the Directors of Drainage District No. 1 of Chester County, Tennessee, as required by law; that

C. H. Little & Co. were bondholders and that attorneys filing the original bill were representing C. H. Little & Company and in no way did they represent the Drainage District. The material prayers were that the deed from C. H. Little & Company to Gaddy be set aside as a cloud on complainant's title and that the decree rendered in the proceeding to enforce the lien of the drainage assessments "be cancelled, set aside and for nothing held as being a cloud on the title of your complainant".

C. H. Little & Company answered, averring that it was not a corporation but a partnership composed by C. H. Little and Ray B. Burton; that C. H. Little & Company made no conveyance of the land in question but that in the cause of Chester County, Tennessee, for Use, etc., v. L. W. Patterson et al., C. H. Little became the purchaser of the land and thereafter by deed quitclaimed it unto the defendant, Gaddy. The answer further avers that the validity of the decree in the other cause could not be called in question in this collateral proceeding nor on account of any of the averments contained in the original bill. Gaddy filed a separate answer, setting out the circumstances under which he took the conveyance from C. H. Little, the ultimate effect of which was a denial that there was any fiduciary relation between him and the complainant about the matter.

Thereafter the complainant filed an amended and supplemental bill, making the partners, C. H. Little and Ray B. Burton, parties to the cause, in which it was again charged in somewhat more detail that C. H. Little & Company acquired no title to the tract because the decree of sale in the proceeding to enforce the lien of the drainage assessments was void. As indicated the basis of this charge seems to be that the attorneys ostensibly representing the complainant in that proceeding, in fact repre-

sented the holders of the bonds that had been issued by the Drainage District and that permission to institute said proceeding had not been granted by the board of directors of the Drainage District.

The prayers are that Little and Burton be made parties and compelled to answer under oath whether they had authority to file the bill in the other cause "and if so to file their authorities in exhibit to their answer, and that the deed to C. H. Little be cancelled and for nothing held."

To the amended and supplemental bill, C. H. Little and Ray B. Burton demurred on the grounds, among others, that it appeared on the face of the record that neither was a necessary party to the suit; that neither had or claimed any interest in the land which was the subject matter of the suit; and that in any event the decree of sale in the other cause was not subject to the collateral attack such as that attempted to be made in the amended and supplemenal bills.

Gaddy filed an answer in which he also took the position that the decree of sale in the other cause was not subject to the attack sought to be made.

The chancellor sustained the demurrer of Little and Burton and the case went to proof upon the issue joined between Patterson and the defendant Gaddy. Upon the trial the chancellor dismissed the original and supplemental bills and the complainant appealed.

The record presents two questions: (1) whether Gaddy acquired the title from Little under such circumstances that he must be held to have taken it in trust for the complainant; and (2) whether the averments of the bill and the proof are sufficient to impeach the decree of sale that was entered in the proceeding to enforce the lien of the drainage assessments.

Patterson, who formerly lived in the community where the land lies and who now lives in Memphis, asked Mr. Harris to help him sell his land, which Harris agreed to do. The latter approached Gaddy, from whom he obtained an offer of $2,000, to be paid $500 in cash and "notes for the balance", which he communicated to the complainant. Complainant accepted the offer and instructed Harris to consummate the deal "and fix up the papers." When this came to be done, a misunderstanding arose as to the time when the deferred payments were to be made. Harris communicated this fact to the complainant who, instead of endeavoring to work the matter out satisfactorily to all concerned, "wrote me back and raised his price to $2250.00". When informed of this development, Gaddy "just quit and the deal fell through".

It should be said that the offer of $2000 was for the whole tract of 91 acres and that only 17½ acres lay in the Drainage District and were quitclaimed by the deed from Little to Gaddy.

In connection with the proposed deal Gaddy had made some investigation of the record as to the status of the taxes. He learned that the land in the Drainage District had been sold in the chancery court proceeding to enforce the collection of the delinquent assessments and that it had been purchased by C. H. Little. He said that, upon learning this, he notified the complainant's representative, Mr. Harris, of the facts and requested that Harris write Patterson to the effect that "if he would pay up on the taxes that I would give him the $2,000.00, pay $500.00 cash and pay the balance of $1500.00 in November, 1943"; that some days thereafter Harris showed him a reply from Patterson in which the latter stated "he would not take $2000.00 for the place but he wanted $2250.00, $750.00 cash and the balance in two

payments each in the sum of $750.00 due in one and two years"; that "the letter further stated that he would pay the State and county tax but would not pay any drainage taxes. I read the letter myself and handed it back to Mr. Harris and told him that I was not interested", and that this ended the matter; that he made no agreement to make an investigation and report to the complainant about the taxes but instead made the investigation on his own accord and that the deal fell through because Patterson backed out of his trade; that thereafter for a consideration of $100 he bought from Little that part of the land in the Drainage District which Little had acquired at the chancery court sale.

There is some little conflict between the testimony of the complainant and that of the defendant Gaddy as to whether Gaddy purchased from Little before or after the deal fell through, but this we think is wholly immaterial to a disposition of the question presented. If the complainant's version of the facts be accepted, there is no view of them under which it can be said that there was any fiduciary relation between the complainant and Gaddy and the existence of such a relationship is essential to the contention that Gaddy took the title to the land in trust for the complainant. Negotiations for the purchase and sale of property do not create a fiduciary relation where none exists otherwise.

Moreover, it is not perceived how it can be claimed that any fraud or deception was practiced on the complainant by Gaddy in failing to advise him of the status of his own title. The complainant was a party to the proceeding in which his land was sold to enforce the collection of the drainage assessment against his land and he seems to have been represented in that matter by an attorney. He cannot now be heard to say that he did

not know of the sale. If there was any concealment of the material facts it was on the part of the complainant in agreeing to sell the entire tract to Gaddy without advising him that a portion of it had been sold already and that he had no title to it.

These conclusions are so elementary that it seems unnecessary to cite authority to support them.

As to the other phase of the case, in its last analysis complainant's theory seems to be that if the solicitors ostensibly representing the drainage district in the proceeding to enforce collection of the delinquent assessments acted without authority and in fact represented the bondholders who, rather than the district were the real complainants in that case, then the decree of sale would be absolutely void and subject to attack from any direction.

In the plight of the present case this theory is untenable for several reasons. In the first place there is no proof of the facts upon which it is based. No part of the record in the other proceeding was offered in evidence. In its absence complainants contend that the averments of the bill were admitted by the demurrer of Little and that since Gaddy claims title through Little, the admissions made by the demurrer of his codefendant are available to him. This is a mistaken view. Admissions contained in an answer by one defendant are available to another defendant who claims title under him, but the admissions of an answer and the admissions of a demurrer are quite different things. A demurrer is only a tentative admission of the averments of the bill made for the sole purpose of testing their legal sufficiency. Gibson's Suits in Chancery, Sec. 276. Such admissions cannot be utilized to supply the place of proof upon the trial

of issues joined by an answer, either against the demurrant or any one else.

■ Moreover, the averments of the bill show that Little was not a proper or necessary party to this suit. They show that he was not a party to the decree at which the attack is levelled. They show also that the drainage district, not a party to the present suit, was a party to that decree and hence a necessary party to any suit in which it is impeached.

The defect as to parties, apart from other questions, would be fatal to the complainant's attack. Gibson's Suits in Chy., sec. 935.

In the second place, the averments of the bill in other respects are fatal to the relief sought in so far as it comprehends an attack on the decree in the other case. Assuming without deciding that the attack made by the amended and supplemental bill is direct rather than collateral, the averments are not only deficient but affirmatively show that complainant has no case. As said, the sole ground of attack seems to be that the original bill in the other proceeding was filed by attorneys who had no authority to represent the named complaint and hence the decree is vulnerable under the decision in Fayette County, for the Use, etc., v. Graham et al., 178 Tenn. 54, 156 S. W. (2d) 379. This is a misconception of the law.

■ The proceeding to enforce the collection of delinquent drainage assessments by sale of the assessed land is purely statutory and it is true that the statute must be strictly followed. Code, section 4355 provides for the collection of the delinquent assessment by suits in chancery. The next section provides that the bill shall be filed in the name of the county where the lands are situated for the use of the improvement of the district for the benefit of which the assessments are made. Code,

section 4357 provides that "when it is desired by the board of directors, or other interested party entitled to sue, to file such bill, the county trustee, upon request, shall make out a list, showing all lands upon which assessments are so delinquent," etc. Code, section 4369 provides for the appointment of a receiver to collect at the instance of the holder of any bond or interest coupon that is past due and unpaid the assessments and taxes, and the next section provides that any receiver so appointed shall have the power to institute suits for the collection of delinquent assessments in the same manner that the district taxes would have had, etc.

• Construing these sections, it was held in Fayette County v. Graham, supra, that except in cases where a receiver is appointed pursuant to statutory provisions providing therefor, the bondholders either joining with the county as relators or alone, cannot maintain a suit for the collection of delinquent drainage assessments; that with the exception mentioned such suits can only be instituted upon the authority of the board of directors of the drainage district and that body alone has power to employ attorneys for that purpose.

In the present case it affirmatively appears from the averments of the bill as amended, construed as a whole, that the other proceeding was brought strictly in the manner provided by statute, that is, in the name of the county for the use and benefit of the drainage district. There is no direct averment that it was brought on relation of the bondholders but only one that the solicitor purporting to represent the complainant in that cause in fact represented the bondholders only. It is also expressly averred in the present case that the authority to bring the other proceeding was put in issue and while not so expressly charged, it necessarily follows from the

fact that a sale of the land was ordered that that issue was determined adversely to the defendants in that proceeding, of whom the complainant here was one. Therefore the present attempt is nothing more than an effort to relitigate that issue without any charge of fraud, extrinsic or intrinsic, surprise or mistake.

That this cannot be done even in a direct attack is an elementary proposition. If the issue was wrongly decided in the other case, the remedy was by appeal. After the expiration of thirty days, or the prior adjournment of the term in less time, the chancellor himself could not have reversed his decision, and if he could not have done so in the same cause he certainly had no authority to do so in an independent proceeding, except upon a proven charge of extrinsic fraud, imposition, excusable mistake or the like. Citizens Bank & Trust Co. v. Bayles, 153 Tenn. 40, 281 S. W. 932; College Coal Mining Co. v. Smith, 160 Tenn. 93, 21 S. W. (2d) 1038; Mayor, etc., v. Love, 160 Tenn. 177, 22 S. W. (2d) 769; Gibson's Suits in Chy. 446 and 814.

Since the court had jurisdiction of the subject matter and the parties, there being no charge of extrinsic fraud, imposition or excusable mistake, the decree was conclusive on all issues in the scope of the pleading, including that made the basis of the present attack, even though they were wrongly decided. As said, in that event the remedy was by appeal or writ of error.

The cases that support these conclusions are too numerous to be set out. The applicable principles are stated in Gibson's Suits in Chancery, Sections 446 and 814, and Note 43.

The result is that the decree is affirmed at the cost of complainant.

Ketchum and Baptist, JJ., concur.